DAVID L. HUNTINGTON, Appellant, *v.* MILA, INC., a
Washington Corporation, Respondent.

No. 38707

August 27, 2003 75 P.3d 354

*Levine, Garfinkel & Katz* and *Louis E. Garfinkel,* Las Vegas, for
Appellant.

*Gerrard, Cox & Larsen* and *Douglas D. Gerrard,* Las Vegas, for
Respondent.

Before Shearing, Leavitt and Becker, JJ.

## OPINION

*Per Curiam:*

In this appeal, we consider whether a title insurance company,
conducting a title search on behalf of a lender for the purpose of

issuing a title policy, is the lender's agent. We conclude that a title company is not the lender's agent and, thus, the title company's constructive notice may not be imputed to the lender.

On May 18, 1998, The Donald J. Adams Trust conveyed real property to Tanner Song. On the same day, Song conveyed the property to appellant David L. Huntington, simultaneously executing an unrecorded Real Estate Holding Agreement (Agreement), signed by Song and Huntington. The Agreement states, referring to Song as ''nominee,''

> WHEREAS, HUNTINGTON desires that title to real estate be held by NOMINEE in accordance with this Agreement, and
>
> WHEREAS, NOMINEE is willing to hold title to said real estate in accordance, with the terms hereof,
>
> . . . .
>
> 1. HUNTINGTON shall cause to be transferred and delivered to NOMINEE legal title to the [property]
>
> . . . .
>
> . . . .
>
> C. NOMINEE shall not convey or encumber the [p]roperty except pursuant to the written instructions of HUNTINGTON.

On May 18, 1998, Song signed a Memorandum of Real Estate Holding Agreement (Memorandum), which states, ''Notice is hereby given that Tanner Song holds title to the [p]roperty . . . as NOMINEE pursuant to an unrecorded Real Estate Holding Agreement.'' The Memorandum was recorded on August 5, 1998, and rerecorded on April 21, 1999.

In July 1999, Song applied for a home equity loan from respondent MILA, Inc. As security for the loan, Song executed a deed of trust against the property in the amount of $100,000.00. Prior to the loan execution, Stewart Title conducted a title search on the property. During the title search, a computer printout was generated, which listed the recording and rerecording of the Memorandum. On or about July 27, 1999, the loan was executed.

Huntington filed a quiet title action against MILA. MILA filed an answer and a third party complaint against Song. Song filed an answer and a complaint against Huntington. MILA filed a motion for summary judgment, seeking to dismiss Huntington's claims. The district court granted MILA's motion for summary judgment, determining MILA was a bona fide lender that took an interest in the property without notice of the prior encumbrance. The district court certified its order as final under NRCP 54(b), and this appeal followed.

We will uphold a district court's grant of summary judgment only if a review of the record in the light most favorable to the non-moving party demonstrates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[1] Questions of law are reviewed de novo.[2] In this case, the propriety of the district court's summary judgment depends on a question of law, *i.e.,* whether a title insurance company, conducting a title search on behalf of a lender, is considered the lender's agent.

NRS 111.325, Nevada's statutory recording act, provides:

> Every conveyance of real property within this state hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real property, or any portion thereof, where his own conveyance shall be first duly recorded.

A subsequent purchaser with notice, actual or constructive, of an interest in property superior to that which he is purchasing is not a purchaser in good faith, and is not entitled to the protection of the recording act.[3] A duty of inquiry arises

> "when the circumstances are such that a purchaser is in possession of facts which would lead a reasonable man in his position to make an investigation that would advise him of the existence of prior unrecorded rights. He is said to have constructive notice of their existence whether he does or does not make the investigation. The authorities are unanimous in holding that he has notice of whatever the search would disclose."[4]

During Stewart Title's title search, the computer printout listed the recording and rerecording of the Memorandum. Because the Memorandum states that Song held title to the property as nominee "pursuant to an unrecorded Real Estate Holding Agreement," we conclude Stewart Title, acting as a reasonable title company, should have reviewed the Agreement. Therefore, we conclude Stewart Title had constructive notice of Huntington's interest.

---

[1]*Day v. Zubel,* 112 Nev. 972, 977, 922 P.2d 536, 538 (1996).

[2]*SIIS v. United Exposition Services Co.,* 109 Nev. 28, 30, 846 P.2d 294, 295 (1993).

[3]*Allison Steel Mfg. Co. v. Bentonite, Inc.,* 86 Nev. 494, 499, 471 P.2d 666, 669 (1970).

[4]*Id.* at 498, 471 P.2d at 668 (quoting 4 *American Law of Property* § 17.11, at 565-66 (1952)).

Huntington argues that a title insurance company, conducting a title search on behalf of a lender, is the lender's agent and, thus, a title company's constructive notice should be imputed to the lender.[5] We disagree.[6]

In order to address this question of law, we must look closely at the distinction between an abstract of title and title insurance. Jurisdictions are split in dealing with whether a distinction exists for an abstract of title and title insurance.[7] While some states consider a preliminary title report to be the equivalent of an abstract,[8] other states do not.[9] Nevada has gone even further with a statutory distinction between an abstract of title and title insurance. Specifically, NRS 692A.015, which defines "abstract of title," states that "[t]he term does not include a binder, commitment to insure or preliminary report of title." A "commitment to insure" or "preliminary report of title" is a "report furnished in connection with an application for title insurance."[10] NRS 692A.023, which defines "commitment to insure" or "preliminary report of title," states that "[t]he term does not include an abstract of title." Other states, including California and Washington, have similar statutes distinguishing an "abstract of title" from a "commitment to insure" or "preliminary report of title."[11]

In *Rice v. Taylor,*[12] the California Supreme Court considered whether a title insurance company, in tendering a title policy, acts as a lender's agent. In *Rice,* a property owner applied for a loan to refund the indebtedness of two prior encumbrances on the property

---

[5]Whether MILA had constructive notice of the Memorandum of Real Estate Holding Agreement, and a duty to investigate, based upon the recording of the Memorandum is not at issue in this case. Below, in its motion for summary judgment, MILA asserted that the document was not properly recorded and constructive notice based on recordation did not apply. Huntington did not present any evidence or argument to the contrary in its opposition to the motion.

[6]Nothing in this opinion is intended to affect the ongoing litigation between Song and Huntington.

[7]*See* 1 Am. Jur. 2d *Abstracts of Title* § 2 (1994).

[8]*Id.*; *see also Hall v. World Sav. and Loan Ass'n,* 943 P.2d 855, 861 (Ariz. Ct. App. 1997) (concluding that a title company was a lender's agent for the purpose of a title report and that the lender was bound by whatever notice the title company had).

[9]1 *Abstracts of Title, supra* note 7, § 2; *see also Culp Const. Co. v. Buildmart Mall,* 795 P.2d 650, 654 (Utah 1990) (concluding that the function, form, and character of a title insurer is different from that of an abstractor); *Anderson v. Title Ins. Co.,* 655 P.2d 82, 86 (Idaho 1982) (refusing to impose the liabilities of an abstractor upon a title insurance company merely because it issued a preliminary title report).

[10]NRS 692A.023.

[11]Cal. Ins. Code § 12340.10 (West 1988) ("An abstract of title is not a title policy . . . ."); Wash. Rev. Code Ann. § 48.29.010(3)(b) (West 1999) ("An abstract of title is not a title policy . . . .").

[12]32 P.2d 381, 383 (Cal. 1934).

and failed to disclose the first encumbrance to the lender. The property owner applied for a preliminary title report, revealing the first encumbrance. Without actual knowledge of the first encumbrance, the lender executed the loan. The court stated, "Title insurance is quite a different contract to that of the abstractor of titles."[13] The court concluded that, unlike an abstract of title, a title insurance policy is an indemnity agreement of an independent contractor and contains no elements of agency.[14]

Like California, Nevada defines an abstract of title as "any written representation listing all recorded conveyances, instruments and documents which, under the laws of this state, impart constructive notice with respect to the chain of title of the real property described therein."[15] "Title insurance" is defined as:

> [I]nsuring, guaranteeing or indemnifying owners of property or holders of liens, encumbrances or security interests on the property, and others interested therein, against loss or damage suffered by reason of:
> 1. Liens, encumbrances, security interests and defects in, or the unmarketability of, the title to the property; or
> 2. Invalidity or unenforceability of liens, encumbrances or security interests on the property,
> and any other activity substantially equivalent to these activities.[16]

We conclude that a title insurance company is not required to disclose every encumbrance in a title policy because a title policy, unlike an abstract of title, does not impart constructive notice of encumbrances. Instead, a title company must disclose the encumbrances it is not willing to insure or indemnify against in a title policy.

Although there is no legislative history indicating that NRS 692A.023 is based on California Insurance Code § 12340.10, California's statutory distinction between an abstract of title and title insurance is identical to Nevada's. We are persuaded that the *Rice* opinion's analysis is correct. Because a clear statutory distinction exists between an abstract of title and title insurance, we conclude that a title insurance company, conducting a title search on behalf of a lender, is not the lender's agent. Therefore, a title company's constructive notice may not be imputed to the lender.

Because Stewart Title was not MILA's agent as a matter of law, we refuse to impute Stewart Title's constructive notice to MILA. Accordingly, we affirm the judgment of the district court.

---

[13]*Id.*

[14]*Id.*

[15]NRS 692A.015; *accord* Cal. Ins. Code § 12340.10 (West 1988).

[16]NRS 681A.080.