# IN THE SUPREME COURT OF THE STATE OF NEVADA

LAHRS FAMILY TRUST,
Appellant,
vs.
JPMORGAN CHASE BANK, N.A.,
Respondent.

No. 74059

**FILED**

AUG 27 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a final judgment entered on cross-motions for summary judgment in an action to quiet title. Eighth Judicial District Court, Clark County; Douglas Smith, Judge. Reviewing the challenged summary judgment order de novo, *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005), we affirm.

The district court granted summary judgment to the first deed-of-trust holder, respondent JPMorgan Chase Bank, N.A. (Chase), and against appellant Lahrs Family Trust (the Trust), which purchased the property from the entity that purchased the property at a homeowners' association (HOA) lien foreclosure sale. The district court gave alternative reasons for its decision. We affirm on the basis that the foreclosure sale did not extinguish Chase's deed of trust (DOT) on the property because the $100 sale price for a property valued at $374,000 was grossly inadequate and the sale was marred by fraud, oppression, or unfairness. And, as the district court correctly held, the fact the Trust acquired the property with notice of the dispute between its seller and Chase defeats the Trust's claim to be a bona fide purchaser for value.

To obtain equitable relief based on an allegedly defective sale, the party challenging the sale must demonstrate that there was an

19-35764

inadequate sales price and make a showing of fraud, oppression, or unfairness. *See Shadow Wood Homeowners Ass'n, Inc. v. N.Y. Cmty. Bancorp. Inc.*, 132 Nev. 49, 56, 366 P.3d 1105, 1110 (2016); *Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 133 Nev. 740, 747-49, 405 P.3d 641, 647-48 (2017). The scale is a sliding one. "[W]here the inadequacy [of price] is palpable and great, very slight additional evidence of unfairness or irregularity is sufficient to authorize the granting of the relief sought." *Nationstar*, 133 Nev. at 749, 405 P.3d at 648 (quoting *Golden v. Tomiyasu*, 79 Nev. 503, 515, 387 P.2d 989, 995 (1963)). On appeal, the Trust challenges Chase's entitlement to equitable relief from the foreclosure sale.

Addressing the sale price first, the relevant price is not, as the Trust argues, the $200,000 it paid to buy the property from the entity that purchased it at the HOA foreclosure sale. Rather, we must look to the $100 the Trust's predecessor-in-interest, First 100, LLC (F100), paid to purchase the property at the foreclosure sale. Comparing F100's winning bid amount of $100 to the $374,000 value of the property, the inadequacy of price was palpable and great. *See id.* at 747-50, 405 P.3d at 647-49 (discussing how a district court evaluates price inadequacy in the foreclosure sale context).

Turning to the evidence of fraud, oppression, or unfairness, Chase first points to an agreement the HOA entered into with F100 wherein the HOA sold its interest in both future and current delinquent HOA assessments. That the HOA entered into a factoring agreement with F100 does not cast doubt on the legitimacy of the foreclosure sale. *See W. Sunset 2050 Tr. v. Nationstar Mortg. LLC*, 134 Nev. 352, 355-57, 420 P.3d 1032, 1035-37 (2018) (rejecting argument that the factoring agreement deprived the HOA of standing to foreclose or impermissibly split the lien; adding that,

"Nationstar has provided no argument as to why, as a practical or policy matter, we should discourage HOAs from executing factoring agreements [since s]uch agreements serve the valid purpose of providing HOAs with immediate access to cash, thus helping them meet their perpetual upkeep obligations"). But the problem in this case is not with the existence of a factoring agreement. The problem is that the agreement required the collection agent to set the opening bid at $99, and that the HOA credit bid the opening bid amount but agreed "not to bid any higher." Given the gross disparity of price to value—$100 to $374,000—we agree with Chase that these facts suggest that there was some unfairness in the foreclosure process that affected the sale. *See Las Vegas Dev. Grp., LLC v. Yfantis*, 173 F. Supp. 3d 1046, 1058 (D. Nev. 2016) (noting that collusion between the winning bidder and the entity selling the property may constitute fraud, oppression, or unfairness). The lack of competitive bidding and inadequate sale price further suggest that this unfairness chilled bidding on the property. *See Country Exp. Stores, Inc. v. Sims*, 943 P.2d 374, 378 (Wash. Ct. App. 1997) (noting that one type of chilled bidding "is intentional, occurring where there is collusion for the purpose of holding down the bids," and that "[t]o establish chilled bidding, the challenger must establish the bidding was actually suppressed, which can sometimes be shown by an inadequate sales price") (citing to G. Nelson & D. Whitman, *Real Estate Finance Law* § 7.21 (3d ed. 1994)); *S. Capital Pres., LLC v. GSAA Home Equity Tr.*, Docket No. 72461 (Order of Reversal and Remand, Mar. 15, 2018) (holding that evidence of competitive bidding that increased the initial opening bid by more than $16,000 supported an inference that bidding was not chilled by any alleged unfairness).

Chase also points to a pre-foreclosure letter sent by the HOA's agent, which stated, "[t]he Association's Lien for Delinquent Assessments is Junior only to the Senior Lender/Mortgage Holder. This Lien may affect your position." As other courts have noted, this type of letter may constitute unfairness because it gives the impression that a purchase would remain subject to the first DOT on the property. *See ZYZZX2 v. Dizon*, No. 2:13-CV-1307, 2016 WL 1181666, at *5 (D. Nev. Mar. 25, 2016). A foreclosure sale that does not extinguish the first deed of trust but leaves it intact produces a lower bid price, because any buyer would take subject to the first deed of trust. And, at the very least, the letter suggested that the HOA was seeking to foreclose only on the subpriority portion of the lien, thereby lulling Chase into believing its senior lien was not in jeopardy.

The Trust disputes the significance of the foregoing facts but not the sufficiency of the record to establish them as undisputed. Together, these facts establish as a matter of law the "very slight" evidence of fraud, oppression, or unfairness required to set aside a sale on equitable grounds when, as in this case where a property valued at $374,000 sold for $100, the inadequacy of price was "palpable and great." *Nationstar*, 133 Nev. at 749, 405 P.3d at 648 (quoting *Golden*, 79 Nev. at 515, 387 P.2d at 995).

The Trust also argues that the sale should not be set aside because it is a bona fide purchaser for value. *See Shadow Wood*, 132 Nev. at 63, 366 P.3d at 1114 ("When sitting in equity, . . . courts must consider the entirety of the circumstances that bear upon the equities."). The district court did not err in rejecting this argument as a matter of law on the undisputed record facts shown. Under Nevada's recording statute, subsequent purchasers "with notice, actual or constructive, of an interest in the land superior to that which he is purchasing is not a purchaser in good

faith." *Allison Steel Mfg. Co. v. Bentonite, Inc.*, 86 Nev. 494, 499, 471 P.2d 666, 669 (1970); NRS 111.320. The Trust bought the property from its predecessor-in-interest, F100, mid-litigation between Chase and F100. The agreement governing the sale of the property from F100 to the Trust notified the Trust that it must file a quiet title action to extinguish the first DOT on the property and that, if that action was unsuccessful, "THE COURT MAY ORDER THAT THE FIRST DEED OF TRUST SURVIVED THE HOA LIEN AUCTION." This information was sufficient to put the Trust "on inquiry which if prosecuted with ordinary diligence would [have] [led] to actual knowledge," of Chase's DOT. *Allison Steel* at 497-98, 471 P.2d at 668-69 (internal quotation marks omitted) ("Constructive notice is that which is imparted to a person upon strictly legal inference of matters which he necessarily ought to know, or which, by the exercise of ordinary diligence, he might know." (internal quotation marks omitted)). As the Trust had constructive notice of Chase's potential competing claim to the property, the district court correctly held as a matter of law it was not a bona fide purchaser.

Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____Pickering_____, J.
Pickering

_____Parraguirre_____, J.
Parraguirre

_____Cadish_____, J.
Cadish

SUPREME COURT
OF
NEVADA

(O) 1947A

cc: Hon. Douglas Smith, District Judge
Jeffrey R. Albregts, LLC
Smith Larsen & Wixom
Eighth District Court Clerk